# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 12-cr-93 |
| | ) | |
| RANDEE GILLIAM, | ) | |
| DORIAN GILLIAM, | ) | |
| LAMONT WRIGHT, | ) | |
| ERIC CAMPBELL and | ) | |
| FREDERICK ELLIS, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 13-cr-235 |
| | ) | |
| MYRENE GILLIAM, | ) | |
| | ) | |
| Defendant. | ) | |

## OMNIBUS OPINION AND ORDER RE: DEFENDANTS' PRETRIAL MOTIONS

These related cases arise from a lengthy investigation of an alleged large/ significant cocaine conspiracy. Presently before the Court for disposition are numerous pre-trial motions which have been filed by the remaining Defendants.[1] (Criminal Case No. 12-93, ECF Nos. 389, 428, 446, 532, 533, 538-542, 544-546, 547, 549, 614, 669, 674, 676,678, 680, 682-685, 689; Criminal Case No. 13-325, ECF Nos. 29-35). The government, with the Court's permission, filed an omnibus response to the motions of Defendants, and has submitted an appendix filed under seal. No remaining Defendant has filed a reply. The motions are now fully briefed and ripe for disposition. The motions to suppress evidence related to a search and

---

[1]Defendants John Saban, Sr., Genaro Coleman, Courtney Wallace, Arlen Smith and Kevin McKinzie have heretofore pled guilty.

seizure of an Avis rental car on March 10, 2012 (ECF Nos. 443, 458, 684, 700) will be addressed in a separate opinion.

Factual and Procedural Background

The charges in this case stem from a lengthy investigation of cocaine trafficking which allegedly involves a Pittsburgh, Pennsylvania distribution ring, an Atlanta-based source of supply, and express mail packages to/from Las Vegas, Nevada. The investigation included, among other techniques: surveillance (including a pole camera), controlled purchases of drugs, Court-sanctioned Title III wiretap intercepts of cellular telephones, a search of a Fed Ex package pursuant to a search warrant, a search of the home of Defendant Ellis pursuant to a warrant, and a "walled-off" warrantless stop of an Avis rental car.

On April 10, 2012, a grand jury returned a one-count Indictment in Criminal Case No. 12-93, which charged ten (10) named Defendants with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine from July 2011 through March 20, 2012. On November 8, 2012, the grand jury returned a 4-count Superseding Indictment. In addition to re-asserting the cocaine conspiracy in Count One, the Superseding Indictment charged Defendants Randee Gilliam, Dorian Gilliam and John Saban in Count Two with conspiracy to commit money laundering from July 2011 through March 20, 2012.[2] This case was originally assigned to the Honorable Judge Nora Berry Fischer. On April 2, 2015, the case was re-assigned to this member of the Court. On August 29, 2013, the grand jury returned a two-count indictment

---

[2]Counts Three and Four asserted firearms charges against Defendants who have pled guilty.

in Criminal No. 13-235, which charged Myrene Gilliam with participation in the same cocaine and money laundering conspiracies set forth in Criminal Case No. 12-93.

Legal Background

The principles of law governing an alleged drug conspiracy can be difficult to grasp. The Third Circuit Model Jury Instructions regarding the crime of "Conspiracy" illustrate the vast scope of the liability to which even a minor or tangential member may be exposed. "Conspiracy" is a criminal offense separate and apart from the underlying drug possession/distribution offenses that were the alleged objectives of the conspiracies in this case. It is a federal crime for two or more persons to agree or conspire to commit any offense against the United States, even if they do not ever actually achieve their objective.

A conspiracy is a type of criminal partnership. In order to establish the crime of conspiracy to distribute and possess with intent to distribute a controlled substance, the jury in this case will be instructed that the government must prove each of the following elements beyond a reasonable doubt:

1.    That two or more persons agreed to distribute and possess with the intent to distribute a controlled substance;

2.    That a Defendant was a party to, or member of, that agreement;  and

3.    That a Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that said Defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives.

The government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or

unspoken, to work together to achieve the overall objective of the conspiracy. The government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The government also does not have to prove that all the members of the conspiracy directly met, or discussed among themselves their unlawful objective, or agreed to all the details, or agreed to what the means were by which the objective would be accomplished. The government is not required to prove that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known to one another. What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

The government must prove that each Defendant knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with the other alleged conspirators toward those goals or objectives. However, the government does not have to prove that a Defendant knew everything about the conspiracy or that he/she knew everyone involved in it, or that he/she was a member of the conspiracy from the beginning. The government also does not have to prove that he/she played a major or substantial role in the conspiracy. On the other hand, evidence which reveals that Defendant only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that he/she was a member of the conspiracy even if he/she approved of what was happening or did not object to it.

The acts or statements of any member of a conspiracy are treated as the acts or statements of all the members of the conspiracy, if these acts or statements were performed or

4

spoken during the existence of the conspiracy and to further the objectives of the conspiracy. Therefore, a jury may consider as evidence against a Defendant any acts done or statements made by any member of the conspiracy, during the existence of and to further the objectives of the conspiracy. The jury may consider these acts and statements even if they were done and made in a Defendant's absence and without his/her knowledge.

There are different statutory maximum penalties for offenses involving different quantities of cocaine: (20 years if the quantity is less than 500 grams; 40 years if the quantity is more than 500 grams but less than 5 kilograms; and life imprisonment if the quantity is more than 5 kilograms).[3] Therefore, the government must prove the amount of cocaine involved in the alleged conspiracy beyond a reasonable doubt. However, it is the amount of cocaine involved in the entire conspiracy charged – not the amount attributable directly to any particular individual Defendant – that must be so proven. *United States v. Phillips*, 349 F.3d 138, 143 (3d Cir. 2003), *vacated and remanded on other grounds sub nom.*, *Barbour v. United States*, 543 U.S. 1102 (2005). Once the jury makes a finding as to the drug quantity attributable to the conspiracy as a whole, the sentencing judge must determine, by a preponderance of the evidence, the drug quantity attributable individually to each convicted Defendant. *Id.* If a Defendant is convicted of conspiracy, he/she is responsible for the quantity involved in the entire conspiracy, not just the quantity of drugs with which he/she was individually involved. *United States v. Barndt*, 2013 WL 3929041 at *3 (3d Cir. July 31, 2013) (non-precedential). *See generally United States v. Claxton*, 685 F.3d 300 (3d Cir. 2012) (discussing whether evidence was sufficient to prove drug conspiracy).

_____

[3]Different statutory mandatory minimum penalties also apply.

Legal Analysis

    With that background, the Court now turns to the pending motions of the Defendants. The Court has elected to largely follow the "grouping" methodology employed by the government in its Omnibus Response as the most efficient and easiest to follow, for the convenience of all concerned. Certain defense motions are addressed in more than one section of this opinion. *See, e.g.*, Omnibus Motion of Lamont Wright (ECF No. 389).

    1.    General Discovery Motions

    Discovery in a criminal case is far different from that in a civil case. The government's obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure. Beyond Rule 16, the Jencks Act, and *Brady v. Maryland,* 373 U.S. 83 (1963), and their progeny, however, a criminal defendant has no general constitutional right to pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). The rights conferred by rule, statute, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. *United States v. Fiorvanti,* 412 F.2d 407, 411 (3d Cir.), *cert. denied,* 396 U.S. 837 (1969). The Third Circuit Court of Appeals has recognized that discovery in criminal cases is limited to those areas listed in Federal Rule of Criminal Procedure 16(a)(1), "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos,* 27 F.3d 65, 68 (3d Cir. 1994). Generally, these other areas are limited to the Jencks Act and materials available pursuant to the *Brady* doctrine. *Id.* The Court appreciates, and in some circumstances shares, the frustration of the Defendants with these discovery limitations.

At the outset, the Court notes that the government has repeatedly acknowledged its obligations under *Brady* and its progeny, *Giglio*, Federal Rules of Criminal Procedure 12 and 16, and the Jencks Act. The government has also made the following representations: (1) that it is willing to cooperate with any reasonable request of Defendants; (2) that it is unaware of any exculpatory *Brady* material pertaining to Defendants; (3) that it will voluntarily turn over Jencks Act materials in its possession at least one week prior to trial; (4) that it will turn over any impeachment materials at least one week prior to trial so that defense counsel can effectively cross-examine government witnesses; (5) that it has already provided copies of reports of relevant scientific tests and will provide a written summary of any expert testimony at least 14 days prior to trial; (6) that it will provide any *Brady* impeachment material as to each trial witness at least two weeks prior to trial; (7) that it will preserve the rough notes taken by agents in accordance with *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983); (8) that at least two weeks prior to trial it will inform Defendants of the general nature of any specific bad act evidence it will seek to introduce at trial pursuant to Fed. R. Crim. P. 404(b) and 609 and that it has already provided copies of their respective criminal records; and (9) that it will provide redacted copies of the Presentence Investigation reports ("PSI") of cooperating witnesses at least one week prior to trial. The Court is confident that the government is well aware of its continuing duty to provide material to Defendants, and that it will faithfully discharge its duty without "tacking too close to the wind." *Kyles v. Whitley,* 514 U.S. 419, 439 (1995).

The government also represents that it has already disclosed substantial amounts of evidence in this case to Defendants, including written and recorded statements of Defendants, copies of all of the wiretap intercepts, copies of the Applications, Affidavits and Court Orders

pertaining to the wiretap intercepts, case photos, pen register data, copies of agent reports and lab reports. At least two weeks prior to trial, the government will provide defense counsel with a list of the wiretap calls it intends to use in its case-in-chief. Similarly, the government notes that its physical evidence has long been available for review and it has invited defense counsel to meet with and question the government agents regarding their clients' alleged roles in the conspiracy.

The Court will now address the various categories of information sought by one or more of the remaining Defendants.

a.      Early Disclosure of Jencks Act Materials

Defendants seek early disclosure of Jencks Act materials. The Jencks Act, 18 U.S.C. § 3500, requires the government to provide the defense with statements of witnesses that the government intends to call <u>at trial</u>.[4] The government has no duty to make an earlier disclosure. The government recognizes that evidence which would tend to impeach the testimony and/or the credibility of a witness must be turned over in advance so that defense counsel is able to effectively cross-examine that witness. Moreover, the government recognizes that strict compliance with the Jencks and *Brady* time limits could result in delay during the trial. Thus, the government has represented that impeachment materials relating to its trial witnesses will be provided at least one week prior to trial. Given the potential scope of this trial, the Court encourages the government to provide Jencks materials at least fourteen (14) days prior to trial,

---

[4] The government is reminded of the mandate from our appellate court that in gathering potential Jencks Act materials "prosecutors have an obligation to make a thorough inquiry of all enforcement agencies that ha[ve] a potential connection with the[ir] witnesses." *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2006) (*citing United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993)). *See also United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008).

although the Court will not require the government to do so.   Accordingly, these motions of

Defendants (Criminal Case No. 12-93, ECF Nos. 389 § F, 539, 549, Criminal Case No. 13-235,

ECF No. 30) are **DENIED**.


        b.    *Brady* Exculpatory Material

        Defendants request disclosure of all material and information that may be favorable

to them on the issues of guilt and/or punishment.  Defendants correctly point out that this

information must be viewed cumulatively.   As noted *supra*, the government has represented that

it accepts its obligations under *Brady*, but is not aware of any exculpatory or *Brady* material

pertaining to any Defendant.  Accordingly, these motions of Defendants (Criminal Case No. 12-

93, ECF Nos. 389 § E, 674, 675) are **DENIED WITHOUT PREJUDICE**.


        c.    Law Enforcement Rough Notes

        Defendants have sought preservation of the "rough notes" taken by law enforcement

agents during their investigations.  The government acknowledges its obligation to preserve such

rough notes.  *United States v. Ramos*,  27 F.3d 65, 68-69 (3d Cir. 1994).  To the extent that

Defendants have also sought disclosure of the rough notes, the government objects to disclosure.

The rough notes of law enforcement agents generally are not discoverable unless those notes,

pursuant to Fed.R.Crim.P. 16(a)(1)(A), constitute the substance of oral statements of a defendant

which the government intends to offer into evidence at trial, which statement was given in

response to interrogation by a person then known by the defendant to be a government agent.  *See*

*United States v. Fischbach and Moore, Inc.*, 576 F. Supp. 1384, 1390 (W.D. Pa. 1983).

In accordance with the foregoing, the motions (Criminal Case No. 12-93, ECF Nos. 389 § D, 532, Criminal Case No. 13-235, ECF No. 31) are **GRANTED IN PART** as to the preservation of such notes and **DENIED IN PART** as to disclosure of such notes to Defendants.

        d.       Witness List

Defendants seek early disclosure of the government's anticipated trial witnesses. The government objects to any expansion of its discovery obligations beyond its applicable legal requirements. The government has articulated a particularized concern regarding premature disclosure of its witnesses in this case, given the scale and scope of the alleged conspiracy. The government is not obliged to provide a witness list in a non-capital case except in conformity with the Jencks Act, which requires the government to provide the defense with statements of witnesses that the government intends to call <u>at trial</u>. The government recognizes that strict compliance with the Jencks and *Brady* time limits could result in delay and has represented that impeachment materials relating to its trial witnesses will be provided at least one week prior to trial. Although the Court encourages an earlier disclosure, the government will not be required to do so. Accordingly, Defendants' motion (Criminal Case No. 12-93, ECF No. 389 § C) is **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government.

        e.       Miscellaneous Discovery Motion of Defendant Ellis

Defendant Ellis seeks numerous itemized categories of discovery, many of which have been hereinabove addressed. The government has addressed each of the itemized categories

of information sought by Ellis.  The government contends that:  (1) it has fully complied with its

discovery obligations (or will do so); and (2) it objects to any efforts to expand its discovery

and/or disclosure duties.  Defendant Ellis has not articulated any specific violation of the

government's duties or its responses to the itemized categories of information.  Accordingly, the

discovery motion of Defendant Ellis (Criminal Case No. 12-93, ECF No. 538)  is **DENIED**

**WITHOUT PREJUDICE** to reassert in the context of any specific alleged breach by the

government.  The Court notes that all Defendants will have the opportunity to assert appropriately

targeted  motions in limine.


       f.       Miscellaneous Discovery Motion of Defendant Campbell

       Defendant Campbell also seeks numerous itemized categories of discovery, many of

which have been hereinabove addressed.  The government has addressed each of the itemized

categories of information sought by Campbell.  As with Defendant Ellis, the government contends

that:  (1) it has fully complied with its discovery obligations  (or will do so); and (2) it objects to

any efforts to expand its discovery and/or disclosure duties.  In particular, the government has

provided details regarding the arrangements for defense counsel to view the pole camera videos.

Defendant Campbell has not articulated any specific violation of the government's duties or its

responses to the itemized categories of information.  Accordingly, the discovery motion of

Defendant Ellis (Criminal Case No. 12-93, ECF Nos. 676, 677) is **DENIED WITHOUT**

**PREJUDICE** to reassert in the context of a specific alleged breach by the government.

g.      Test Results and Expert Reports

Defendant Myrene Gilliam has requested disclosure of scientific test results and expert reports.  As noted above, the government represents that it has previously provided test results, and that summaries of expert testimony will be provided at least two weeks prior to trial. In accordance with the foregoing, the motion of Defendant Myrene Gilliam (Criminal Case No. 13-235, ECF No. 34) is **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government.

h.      Motions for Disclosure of Evidence Subject to Suppression

Defendant Ellis asks the Court to require the government to disclose evidence that may be subject to suppression.  The government represents that it has already made such disclosures.  In accordance with the foregoing, the said motion of Defendant (Criminal Case No. 12-93, ECF No. 541) is **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government.

2.      Rule 404(b) and 609 Evidence

Defendants have requested the disclosure of evidence of other crimes, wrongs or acts that the government intends to introduce at trial, pursuant to Fed. R. Evid. 404(b) and 609. The government has stated that it has not yet identified the specific "bad act" evidence it will seek to introduce at trial, and notes that it has already provided Defendants with copies of their respective criminal records.  In addition, the government has represented that it is aware of its obligation and will provide such evidence at least two weeks prior to trial.  Accordingly,

Defendants motions (Criminal Case No. 12-93, ECF Nos. 389 § B, 540, 544, 678, 679, 683, Criminal Case No. 13-235, ECF No. 33) are **GRANTED AS UNOPPOSED** in part, in accordance with the government's agreement and representation. To the extent that Defendants seek to exclude Rule 404(b) evidence, those motions are premature and must await the further development of the record at trial. Accordingly, such motions are **DENIED WITHOUT PREJUDICE**. A pretrial hearing is not warranted on this issue.

3. <u>Motion to Designate Recordings to be Used at Trial</u>

Defendant Ellis seeks disclosure of the specific phone calls that will be played at trial. The government represents that such disclosure will be made at least two weeks prior to trial and objects to any earlier disclosure. The Court encourages earlier disclosure but the government will not be required to do so. The Court also notes that no Defendant has raised an audibility-related concerns which might necessitate a *Starks* hearing. In accordance with the foregoing, the motion (Criminal Case No. 12-93, ECF No. 542) is **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government.

4. <u>Motion for *James* Hearing on Admissibility of Co-Conspirator Statements</u>

Defendant Myrene Gilliam moves for a pretrial hearing pursuant to Fed. R. Evid. 104 and 801(d)(2)(E) to determine whether a conspiracy exists such that the government can introduce statements of alleged co-conspirators. *See United States v. James*, 590 F.2d 575 (5th Cir. 1979); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). A *James* hearing is not required in every case, but is within the discretion of the Court. The government contends that such a

hearing would be protracted, duplicative of the trial on the merits, is unnecessary, and is a backdoor attempt to obtain premature disclosure of its witnesses. The government argues that the admissibility of co-conspirator statements should be decided at trial.

The Court agrees with the government that a pretrial hearing is not warranted under the facts and circumstances of this case. There is substantial evidence of the existence of a drug conspiracy, as reflected by the guilty pleas of a significant number of the Defendants charged in this case. Moreover, in *Government of Virgin Islands v. Brathwaite*, 782 F.2d 399, 403 & n.1 (3d Cir. 1986), the Court explained that "the prosecution must lay a foundation for the admission of co-conspirator testimony by establishing the existence of a conspiracy that included the defendant or defendants," but noted that there is a distinction between the crime of conspiracy and the "co-conspirator exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2)(E)." In *United States v. Giampa*, 904 F. Supp. 235, 286 (D.N.J. 1995), the Court explained: "a practical evidentiary rule has developed whereby a co-conspirator's statement is conditionally admitted into evidence, subject to the Government's obligation to prove the conspiracy's existence and each conspirator's participation therein before the close of the Government's case." "In the event the Government fails sufficiently to connect the defendant to the conspiracy, the "connection up" rule of admitting co-conspirator statements can lead to a mistrial." *Id.* This procedure appears to be eminently practical in this case, and it will be the government's burden to "connect up" each Defendant at trial. Accordingly, the motion for a pretrial *James* hearing regarding the admissibility of co-conspirator statements (Crim. No. 13-235, ECF #32) is **DENIED**.

<u>5.</u>     <u>Motion for Bill of Particulars</u>

Defendant Myrene Gilliam seeks more particular information regarding the alleged conspiracy, and specifically, the date on which the government contends that she joined the conspiracy.

 Federal Rule of Criminal Procedure 7(f) provides as follows:

The Court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).

A district court has broad discretion in granting or denying a criminal defendant's motion for a bill of particulars. *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir. 1989).  The purpose of a bill of particulars is to inform the defendant of the nature of the charge(s) brought against him or her so that the defendant is able to adequately prepare a defense.  *United States v. Addonizio,* 451 F.2d 49, 63 (3d Cir.), *cert. denied*, 40 U.S. 936 (1972).   The Court of Appeals for the Third Circuit has instructed that a district court should grant a motion seeking a bill of particulars when an indictment's failure to provide factual or legal information "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial."  *Rosa*, 891 F.2d at 1066.  However, a defendant is not entitled to general discovery of the government's case, evidence or witnesses.  *United States v. Armocida,* 515 F.2d 49, 54 (3d Cir.), *cert. denied,* 423 U.S. 858 (1975).

A bill of particulars need reveal "only the minimum amount of information necessary to permit the defendant to conduct [her] own investigation."  *United States v. Smith*,

776 F.2d 1104, 1111 (3d Cir. 1985). In ruling on a request for a bill of particulars, the Court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment. *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir.), *cert. denied,* 490 U.S. 914 (1972). In this case, Defendants have been provided with the extensive Affidavits in support of the wiretap applications, copies of intercepted calls and the government represents that it has made other ongoing disclosures of evidence.

In exercising its discretion in this case, the Court concludes that a bill of particulars is not warranted. The government has provided substantial pretrial disclosures, the Indictment adequately apprises Ms. Gilliam of the pending charges, and the alleged drug conspiracy is straight-forward and of relatively short duration. Although there are numerous alleged co-conspirators, it is not incumbent upon the government to prove the role(s) played by each Defendant. *United States v. Boffa*, 513 F. Supp. 444, 485 (D. Del. 1980) (citations omitted). Accordingly, the motion for a bill of particulars (Crim. No. 13-235, ECF #35) is **DENIED**.


6.     Motion to Review PSI's of Cooperating Witnesses

Dorian Gilliam seeks to review the Pre-Sentence Investigation Reports ("PSIs") of all cooperating witnesses. The government represents that it will provide redacted copies of such PSIs to the defense along with the Jencks materials at least one week prior to trial. Personal, non-impeachment information will be redacted prior to this disclosure.

The Court agrees that this is an efficient, practical way to provide legitimate impeachment information to the defense. The Court will authorize disclosure of the redacted PSI

reports to the defense, as represented by the government pursuant to Local Rule 32.1. In accordance with the foregoing, the motion (Crim. No. 12-93, ECF # 533) will be **GRANTED**.

       7.      Motion to Suppress Evidence From Pole Camera

        Defendant Lamont Wright seeks to suppress evidence obtained by the operation of a pole camera that was directed at his home on National Drive. The camera was located on a utility pole across the street, with the knowledge and consent of the utility company. It captured images of the front of Wright's home that were in plain view from the public street, which were transmitted to law enforcement agents.

        Although the Court of Appeals for the Third Circuit has not directly ruled on the admissibility of images from a pole camera, the Court of Appeals for the First Circuit addressed this precise issue in *United States v. Bucci*, 582 F.3d 108, 116-17 (1st Cir. 2009). The *Bucci* Court held that the defendant had clearly failed to establish that he had an objectively reasonable expectation of privacy. The Court explained:

> An individual does not have an expectation of privacy in items or places he exposes to the public. *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *see also California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). That legal principle is dispositive here. *See Kyllo v. United States*, 533 U.S. 27, 31–33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (noting lawfulness of unenhanced visual surveillance of a home).

*Id.* at 117.  *Accord United States v. Jackson*, 213 F.3d 1269, 1280-81 (10th Cir. 2000), *vacated on other grounds*, 121 S. Ct. 621, ("use of video equipment and cameras to record activity visible to the naked eye does not ordinarily violate the Fourth Amendment").

The reasoning in *Bucci* and *Jackson* is compelling.  In this case, Lamont Wright cannot establish an objectively reasonable expectation of privacy when the images captured by the pole camera were visible to any person who was located in the public street looking at his home. Defendant's attempt to analogize a pole camera to a GPS device is not persuasive.

In accordance with the foregoing, the motion to suppress the pole camera images (Criminal No. 12-93, ECF # 446) is **DENIED**.


8.      Motion to Suppress Fed Ex Package

Randee Gilliam seeks to suppress evidence relating to the seizure of a Fed Ex package on October 6, 2011, which contained $28,980[5] in United States currency.  The search was conducted pursuant to a search warrant.

Gilliam raises two arguments:  (1) that the affidavit does not explain why the package came to the attention of law enforcement; and (2) that a *Franks* hearing is warranted because the affidavit contains material, false information;  namely, that the sender's address does not exist.  The government contends, first, that Randee Gilliam has not yet demonstrated that he has standing to challenge the search.  In addition, the government contends that the search warrant was supported by probable cause and that there is no need for a *Franks* hearing.

_____

[5]Defendant's motion states that there was $30,000 in the package.

The Court will assume, arguendo, that Gilliam is able to establish standing because his motion to suppress fails on its merits. In order to be entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, (1978), a defendant must make a dual showing: (1) "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit ....," *id.* at 155–56; and (2) that the offending information is "necessary to the finding of probable cause." If the offending information is excluded and probable cause still remains, a *Franks* hearing is not required. *Id.* at 156. *See also United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) (reiterating the *Franks* test as a two-part test which requires the defendant to "show both bad faith or reckless disregard existed on the part of the affiant, and that there would have been no probable cause but for the incorrect statement"). As to the first prong of the *Franks* standard, the defendant must make a substantial preliminary showing "of deliberate falsehood or of reckless disregard for the truth ... accompanied by an offer of proof." *Franks*, 438 U.S. at 171. *See United States v. Marranca*, 98 Fed. Appx. 179 (3d Cir. 2004) (non-precedential).

In this case, Randee Gilliam argues that the affidavit contains a material, factual falsity. The affidavit prepared by officer Steven Dawkin states that the package was shipped from "24 5th 8th Street, Pittsburgh, PA 15203." The affidavit further states that this address "does not exist" and explained that it is common for narcotic laden parcels to contain such fictitious information. Gilliam contends that the "ship from" address, in actuality, is 24 South 8th Street, Pittsburgh, PA 15203, which is an actual address. Defendant has attached a copy of the Fed Ex label as an exhibit.

The Court concludes that Defendant has failed to establish either prong of the *Franks* test. Upon examination of the Fed Ex label, there is no factual falsity in the affidavit. Contrary to Defendant's contention, the Fed Ex label <u>does</u> appear to have a "ship from" address of "24 5th 8th St., Pgh., PA 15203," exactly as stated by officer Dawkin. Even assuming, arguendo, that the shipper intended to refer to "South" 8th Street, rather than "Fifth" 8th Street, there is absolutely no evidence that any mis-interpretation by officer Dawkin was deliberate or recklessly false.[6] To the contrary, officer Dawkin accurately and fairly reflected the information on the Fed Ex label.

The "materiality" prong of the *Franks* test is intertwined with the probable cause analysis. The affidavit contained more than sufficient information to support a practical, common-sense expectation that contraband or evidence of a crime would be found in the package. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To wit, even excluding the fictitious "ship from" address, the affidavit explained that the package exhibited numerous indications of narcotics-related activity. Specifically, the package was sent to a drug source city; it was shipped standard overnight; it was dropped off at a Packing shipping company; it was paid for in cash; and it was labeled "Hold at Fed Ex location" so that it could be retrieved in person. The affidavit explained how the use of each of these techniques helps narcotics traffickers to conceal their identities. Most notably, the affidavit explained that a certified narcotic-detecting canine had alerted to the presence of a controlled substance within the parcel.

----

[6]The "5" and the "S" are confusingly similar and it would be odd to abbreviate "South" as "Sth" rather than "S." As an aside, the address of "24 South 8th Street, Pittsburgh, PA 15203" also appears to be fictitious, as the Court cannot locate such an address on Google Maps or the Allegheny County Real Estate website, nor ownership by J. Saban or First Group of any parcels on South 8th Street.

In summary, the search warrant was issued by the magistrate based on probable cause and Defendant has failed to demonstrate that a *Franks* hearing is warranted or justified. In accordance with the foregoing, the motion to suppress the October 6, 2011 seizure of the Fed Ex package (Criminal No. 12-93, ECF # 685) is **DENIED**.

9. <u>Motion to Suppress Search of 226 Hooks Lane</u>

Defendant Frederick Ellis moves to suppress the results of a search of his primary residence at 226 Hooks Lane, Canonsburg, Pennsylvania on March 26, 2012. The search was conducted pursuant to a search warrant issued by United States Magistrate Judge Robert C. Mitchell. The Application and Affidavit by DEA Special Agent Kevin Black was 96 pages in length.[7]

Defendant Ellis has asserted a laundry list from (a) to (l) of boilerplate objections to the validity of the search warrant. Unfortunately, Defendant has not provided any specific discussion to apply these objections to the facts and circumstances of this case. As best the Court can determine, the gravamen of Defendant's argument is that the affidavit fails to provide sufficient details to support the government's belief that Ellis was one of the most significant customers of Lamont Wright; that Ellis purchased kilogram quantities of cocaine; or that there was probable cause to believe that evidence of drug trafficking would be found at 226 Hooks Lane. In addition, Defendant may be contending that the government's information was stale

---

[7] The application covered eight residences, including Hooks Lane, a self-storage unit, and a UPS envelope.

because it references intercepted phone conversations on February 8-9, 2012 and the search was not conducted until March 16, 2012.

The government asserts, first, that Ellis has not met his burden to establish standing to challenge the search. In addition, the government contends that the search warrant was supported by an affidavit which set forth probable cause. The Court will assume, arguendo, that Ellis can establish standing because his motion to suppress fails on its merits.

As an initial matter, the United States Court of Appeals for the Third Circuit has recognized that evidence of drug dealing may be found in a drug dealer's home even if no actual trafficking was observed to have occurred there. *United States v. Whitner*, 219 F.3d 289, 297-98 (3d Cir. 2000) (and cases cited therein). Thus, if the affidavit set forth probable cause to believe that Defendant Ellis was engaged in cocaine trafficking, direct linkage to 226 Hooks Lane is not required. *Id. Accord United States v. Stearn*, 597 F.3d 540, 558 (3d Cir. 2010) (criticizing District Court's unduly restrictive parsing of *Whitner*).

The information contained within the four corners of the affidavit in this case provides probable cause to believe that 226 Hooks Lane is the primary residence of Defendant Ellis (and Jonice Kushenberry), based on information from a confidential source, property database records and surveillance of Ms. Kushenberry's car parked at that location. The affidavit also provides probable cause to believe that Defendant Ellis is engaged in large-scale cocaine trafficking, including: a description of a three-year investigation that began in February 2009; transcripts of intercepted phone calls and surveillance regarding a cocaine transaction between Ellis and Lamont Wright on February 8, 2012 and Ellis' efforts to evade agents (affidavit pp. 67-73); and transcripts of intercepted phone calls between Ellis and Lamont Wright regarding another

purchase of cocaine the next day, on February 9, 2012, regarding another cocaine transaction (affidavit pp. 73-77). In sum, there was a substantial basis for Magistrate Judge Mitchell to issue the search warrant for 226 Hooks Lane and for agents to rely on that search warrant.

The government did not directly address the staleness argument. If the information in an affidavit is too old (i.e., becomes stale), probable cause may no longer exist. *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002). However, there are no "bright line rules" delineating a length of time to determine staleness. Instead, courts must examine the nature of the crime and the type of evidence. *Id*. at 435. Staleness generally requires time periods much greater than two weeks. *United States v. Gorny*, 2014 WL 2860637, at *7 (W.D. Pa. June 23, 2014). The nature of the crime at issue in this case is a large-scale, ongoing cocaine conspiracy that had been under investigation for over three years. Ellis was asserted to be one of Lamont Wright's "most significant customers" in that he purchased "kilogram quantities of cocaine." In that context, the several week gap in time between the intercepted phone calls and surveillance in February 2012 and the execution of the search warrant in March 2012 did not constitute staleness which would defeat the existence of probable cause.

In accordance with the foregoing, the motion to suppress the results of the search at 226 Hooks Lane (Criminal No. 12-93, ECF # 546) is **DENIED**.


10.    Motion to Suppress "Statements"

In Section G of his Omnibus Motion, Lamont Wright "by and through her attorney" [sic] seeks to suppress all statements made by the Defendant as violative of *Miranda*. Defense counsel has not provided any recitation of facts or legal analysis in support of this motion. Given

23

the incorrect reference to "her," this motion appears to be a boilerplate "cut and paste" insertion from some other case. Such conduct by counsel falls well below the standards of professionalism expected by this Court. It is counsel's duty to ensure that each motion has a legitimate basis in law and fact.

In accordance with the foregoing, this portion of Wright's omnibus motion (Criminal No. 12-93, ECF # 389, § G) is summarily **DENIED**.

    11.     <u>Motions to Suppress Wiretap Evidence</u>

There were five Court-ordered Title III wiretap intercepts in this case, involving a total of six target telephones. Defendants seek to suppress all of the evidence obtained by the government through use of the Court-ordered wiretap intercepts at Miscellaneous Nos. 12-4, 12-4(a), (b), (c) and (d).

The government's initial Application for a wiretap was presented to Judge David S. Cercone of this Court on December 30, 2011. The government sought to intercept communications of John Anthony Saban, Randee Gilliam, Todd Griffin, Toni Griffin, Gregory Lomax, Lamont Wright, and others, on a cellular telephone subscribed to and used by Lamont Wright (Target Phone #1) for a period of thirty (30) days. The Application was supported by a 49-page Affidavit prepared by DEA Task Force Officer William J. Flaherty. Judge Cercone granted the Application on December 30, 2011 at Misc. No. 12-4.

The Court[8] issued four additional Orders on January 20, 2012, January 31, 2012, February 16, 2012 and March 8, 2012 (Misc. Nos. 12-4(a)-(d), respectively) to authorize

---

[8]The January 20, 2012 Order at Misc. #12-4(a) was issued by Judge Cathy Bissoon.

24

extensions/expansions of the wiretaps based on followup Applications/Affidavits.[9]  By these

Orders, the government was authorized to intercept communications with a cellular telephone

subscribed to by Frances Saban and used by John Saban (Target Phone #2), a cellular telephone

subscribed to and used by Louis Gilliam (Target Phone #3), a cellular telephone subscribed to by

Ronald Smith and used by John Saban (Target Phone #4),  a prepaid T-Mobile cellular telephone

with no subscriber information used by Lamont Wright (Target Phone #5), and  a cellular

telephone subscribed to and used by Dorain Gilliam (Target Phone #6).  The Applications,

Affidavits and Court Orders have been provided to Defendants.

      Defendants contend that the wiretaps were obtained in violation of 18 U.S.C. §

2518 and were issued without probable cause, in violation of the Fourth Amendment.  In

particular, Defendants argue that the Affidavits failed to satisfy the "necessity" requirement

because they did not establish a sufficient factual predicate as to why other traditional, less-

intrusive law enforcement techniques were not sufficient.  Defendants contend that traditional

techniques, such as GPS tracking devices, controlled purchases of drugs by confidential

informants, interception of packages, surveillance and pen registers had proven effective in this

very investigation (as recognized in the Affidavits), while other methods, such as trash pulls,

search warrants, offers of immunity, grand jury subpoenas and offers of leniency in exchange for

cooperation, were not tried.  Defendant Gilliam argues that agents chose to discontinue the use of

a confidential source, even though continuation would have led to additional information.

Defendants also contend that the "necessity" element was not independently satisfied for each of

---

[9]The Affidavit at Misc. No. 12-4(d) was prepared by DEA Special Agent Kevin William Black.

the successive wiretaps. In addition, Defendants contend that the Applications did not establish probable cause because they contained stale information, relied heavily on the affiant's past experience and contained only vague and conclusory allegations as to the events of this case.

The government contends that its Applications and the underlying Affidavits properly complied with the requirements of the wiretap statute and circuit precedent. *See United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997). The government points out, correctly, that it is not required to restrict itself to limited goals (such as the conviction of a single defendant), but instead may ambitiously attempt to expand its investigation in an effort to dismantle an entire drug organization. The government contends that this is exactly what happened in this case, as the information obtained by the initial wiretaps enabled agents to expand their investigation and obtain additional evidence and identify other members of the conspiracy. The government further notes that Defendants' challenges to the "necessity" element (on the basis that traditional methods of investigation were effective) is entirely contradictory to Defendants' argument that the affidavits failed to articulate probable cause.

As an initial matter, the Court concludes that it need not conduct an evidentiary hearing on the motions to suppress wiretap evidence. The motions challenge the sufficiency of the information contained within the four corners of the Applications and Affidavits and have been thoroughly briefed. The Court will now address the substance of the parties' respective arguments.

The federal wiretap law, 18 U.S.C. § 2518(1)(c), requires that the affidavit in support of a wiretap application contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely

26

to succeed if tried or to be too dangerous." The Court must then determine, on the basis of the application, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § (3)(c). *Williams* outlines a practical and commonsense review, in which the Court may consider affirmations founded in part on the experiences of trained agents. 124 F.3d at 418. In each Order, the Judge expressly concluded that the probable cause and necessity elements were met. The issuing Judge found that the government had adequately demonstrated that normal investigative procedures had been tried with limited success, appeared unlikely to succeed further and/or were too dangerous to attempt.

When a warrant is later challenged, a deferential standard of review is applied in determining whether the issuing judge had a "substantial basis" for issuing the warrant. *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993); *Illinois v. Gates*, 462 U.S. 213, 237 (1983). Upon review of the Affidavits of DEA Task Force Officer Flaherty and DEA Special Agent Black, this Court concludes that they contain sufficient averments regarding the effectiveness and limitations of traditional techniques during this investigation. The Affidavits explained that traditional techniques had provided considerable intelligence of a wide-spread, ongoing narcotics operation, but had been unsuccessful in discovering the full scope of the operation and the identities of all of the individuals involved. The Affidavits discuss, in reasonable detail, the pros and cons of alternative investigative techniques, including telephone toll/pen register, search warrants, physical surveillance, trash pulls, informants and undercover agents, and grand jury subpoenas. Each of the subsequent Affidavits contained a similarly comprehensive discussion of alternative investigative techniques and the need for continued interception and/or initiation of intercepts on additional phones. For example, the original confidential source ("CS") was able to

purchase cocaine only from Lamont Wright, but not other suspected members of the conspiracy. In addition, this CS was subsequently arrested in a separate matter and was unable to make addtional purchases because the CS owed Wright a substantial sum of money. Because the group was tight-knit, it was believed that it would be dangerous to attempt to introduce an undercover agent. On numerous occasions, surveillance was evaded and/or provoked suspicion among the targets of the investigation. To evade detection, the targets used coded language and also used multiple different telephones. Thus, the goverment has satisfied the necessity and probable cause prerequisites. In sum, the Court has no difficulty in concluding that each of the wiretap Applications, Affidavits and Court Orders complied with the statutory requirements.

Defendants Randee Gilliam and Lamont Wright challenge the authorization for the wiretaps. Defendant Lamont Wright's motion attached a Declaration of Peter Sprung, an attorney at the Department of Justice ("DOJ"), apparently to support the proposition that the government failed to attach the appropriate Attorney General delegation order and Assistant Attorney General memorandum of authorization to intercept calls from Target Phone #2 from February 18 to March 8, 2012. These contentions are without merit. From a review of the applications and attachments thereto, it is clear that the government obtained the approvals of the appropriate officials from the Department of Justice and that each wiretap warrant was authorized by an Article III United States District Court Judge. Contrary to Defendant Wright's specific contention, Miscellaneous Order 12-4(c) authorized the interception of calls from Target Phone #2 for thirty days commencing on February 16, 2012 and the application contained the relevant delegation order and memorandum of authorization. *See* Government Exhibit C.4.

Defendant Randee Gilliam challenges the jurisdiction of the Court to issue the order at Misc. No. 12-4(d) because the phone was not located within the Western District of Pennsylvania. As Defendant recognizes, this Court has jurisdiction if either: (1) the phone is located in this district; or (2) the interception of calls occurs within this district. *United States v. Denman*, 100 F.3d 399, 403 (5th Cir.1996) ("interception includes both the location of a tapped telephone and the original listening post, and [ ] judges in either jurisdiction have authority under Title III to issue wiretap orders.") The four corners of the application and affidavit at Misc. No. 12-4(d) make it clear that the investigation was conducted by law enforcement agents in the Western District of Pennsylvania. *See, e.g.* Affidavit ¶ 3 ("In connection with my work for the DEA, I have worked with federal, state, and local law enforcement officers in the Western District of Pennsylvania."); Affidavit ¶ 6 ("This case is being investigated by the DEA, the Internal Revenue Service (IRS) Criminal Investigations Division, Allegheny County District Attorney's Narcotics Enforcement Team (DANET), Pennsylvania State Police (PSP) and the Pittsburgh Bureau of Police.") The government has represented that the "listening post" was located within the Western District of Pennsylvania at the DEA office in McKees Rocks, Pennsylvania. Defendants have not disputed this representation nor requested an evidentiary hearing on this issue. In any event, the application specifically sought authorization pursuant to 18 U.S.C. § 2518(3) to intercept communications outside of Western Pennsylvania and such authority was expressly granted by Judge Cercone.

Finally, Defendant Wright seeks further wiretap discovery, to wit: (1) copies of all calls recorded pursuant to the wiretaps during the investigation; (2) all "wiretap progress reports"; (3) copies of wiretap recordings placed under seal; and (4) all PEN register and trap and trace

orders.  In response, the government represents that: as to item (1), all such calls were provided shortly after arraignment; as to (3), there are no recordings under seal; and as to (4), such orders will be made available for review.  As to item (2), the government objects that wiretap progress reports are not discoverable.  The Court agrees.  *See* Fed. R. Crim. P. 16(a)(2); 18 U.S.C. § 2518(9) (Defendant is entitled to the court order(s) and application(s)).  Any concerns regarding the sufficiency of the progress reports would not warrant suppression of evidence and should be addressed to the issuing judge.  *United States v. Iannelli*, 477 F.2d 999, 1002 (3d Cir. 1973), aff'd 420 U.S. 770 (1975).

In accordance with the foregoing, Defendants' motions to suppress the wiretap evidence (Criminal Case No. 12-93, ECF Nos. 428, 431, 545, 547, 614, 615, 669, 671, 680, 682, 689; Criminal Case No. 13-235, ECF No. 29) are **DENIED**.

12.    Government's Cross-Motion

The government has made a request for reciprocal discovery subject to disclosure pursuant to Federal Rule of Criminal Procedure 16(b)(1).  **The Court ORDERS Defendants to provide the government with the requested reciprocal discovery at least seven (7) days prior to trial.**

So **ORDERED** this 4th day of September, 2015.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:        All counsel of record